

Email: scrimmins@mmlawus.com  
Tel: (212) 880-3624  
Fax: (212) 880-3998

1185 Avenue of the Americas  
21st Floor  
New York, NY 10036

July 31, 2018

Hon. Katherine Polk Failla, U.S.D.J.  
United States District Court  
40 Foley Square, Room 2103  
New York, NY 10007

      RE:    *Securities and Exchange Commission v. Adam Mattessich and Joseph (Jay) Ludovico*, 18-cv-05884-KPF – Pre-Motion Submission for Motion to Dismiss

Your Honor:

      We are counsel for Defendant Joseph (Jay) Ludovico. We write pursuant to Individual Practice Rule 4(A) to provide a pre-motion submission in connection with our intended motion to dismiss as to our client under Fed. R. Civ. P. 12(b)(6). The motion is not on consent.

      The Complaint charges **(i)** that non-party Cantor Fitzgerald & Co., a broker-dealer, violated a books-and-records provision of Securities and Exchange Act §17(a), 15 U.S.C. §78q(a), and Rule 17a-3(a)(19), 17 C.F.R. §240.17a-3(a)(19); and **(ii)** that Ludovico "at least recklessly" aided and abetted Cantor's non-fraud books-and-records violation. We submit that the Complaint should be dismissed as to Ludovico, consistent with the principles you recently set forth in *Price v. City of New York*, 2018 WL 3117507, *5-*6 (S.D.N.Y. June 25, 2018).

### Factual Allegations Concerning Ludovico

      Jay Ludovico joined Cantor in October 1998 and remained with the firm for almost 20 years. Cantor allowed him to resign in 2018. He is now unemployed. (Complaint ¶¶17-18, 39)

      In 2002, Ludovico was a "sales trader" (taking customer orders) on the firm's International Equities Desk ("the Desk"). Co-Defendant Adam Mattessich was an "execution trader" (routing and filling orders). (Complaint ¶¶3, 26) Cantor denied Mattessich's request to receive commissions on certain accounts he had been servicing, and "instructed him to transfer the accounts to more junior sales traders for coverage." (Complaint ¶¶2, 27) As instructed, Mattessich transferred certain accounts to Ludovico and another trader ("the Junior Sales Trader" in the Complaint). Mattessich asked them to pay some of their commissions from these accounts to Mattessich, with amounts and timing discretionary, and both did. (Complaint ¶¶3, 28, 30-31)

Hon. Katherine Polk Failla, U.S.D.J.
July 31, 2018
Page 2 of 3

In May 2003, the SEC promulgated Rule 17a-3(a)(19), requiring broker-dealer firms like Cantor to keep records of the compensation paid to their "associated persons" (individual brokers). (Complaint ¶22)  In 2004, Cantor made Mattessich the Desk's new supervisor, in charge of Ludovico, the Junior Sales Trader, and others on the Desk. (Complaint ¶¶5, 33) Ludovico and the Junior Sales Trader continued to make payments to Mattessich by personal checks, which they wrote and handed to him on the Desk. (Complaint ¶32)  Apart from these checks, Ludovico did not otherwise keep "records" of his payments. (Complaint ¶40)

While still the Desk's supervisor in 2011, Mattessich arranged for another trader he supervised to also begin receiving from Ludovico and the Junior Sales Trader a portion of their commissions on certain accounts. (Complaint ¶¶6-7, 36)  Beginning "in at least February 2012," Cantor assigned multiple account executive codes to Ludovico, "which reflected commission splits between Ludovico and other trading desks and employees." (Complaint ¶29)

### Failure to State a Claim for Aiding and Abetting

Aiding-and-abetting liability is statutorily limited to persons who "knowingly or recklessly" provide "substantial assistance" to a primary securities violator.  Securities Exchange Act §20(e), 15 U.S.C. §78t(e).  "To survive a motion to dismiss a claim of aiding and abetting liability, the SEC must allege: '(1) the existence of a securities law violation by the primary (as opposed to the aiding and abetting) party; (2) knowledge of this violation on the part of the aider and abettor; and (3) substantial assistance by the aider and abettor in the achievement of the primary violation.' ... Substantial assistance, in turn, requires that the aider and abettor 'in some sort associated himself with the venture, that he participated in it as in something that he wished to bring about, and that he sought by his action to make it succeed.'" *SEC v. Lek Securities Corp.*, 276 F. Supp. 3d 49, 58 (S.D.N.Y. 2017) (Cote, J.), quoting *SEC v. Apuzzo*, 689 F.3d 204, 206, 211 (2d Cir. 2012).  The Complaint here fails to state such a claim for three reasons:

**(1)** <u>**No Primary Violation**</u>**.**  Rule 17a-3(a)(19)'s plain language requires firms to maintain records of compensation they pay their associated persons.  <u>Cantor did this</u>.  The rule does not require firms to track what their associated persons do with their compensation after they receive and pay taxes on it.  The rule has never been interpreted in a litigated case.  The only non-litigated administrative consent order applied the rule to the relationship between a firm and its associated person, not to the relationship between the associated person and another. *Matter of Legend Securities, Inc.*, SEC Rel. 34-64502, 2011 WL 1847051 (May 16, 2011) (rule "requires registered brokers and dealers to make ... records 'of all agreements pertaining to the relationship between each associated person' and the broker or dealer").

Where a statute or rule specifies its applicability to one particular alternative but not to another, it should not be inventively stretched to extend to the alternative not included. *John Wiley & Sons, Inc. v. DRK Photo*, 882 F.3d 394, 399, 405 (2d Cir. 2018) (affirming this Court) (Copyright Act allowed "owner of an exclusive right" under copyright to sue for infringement, but did not state that the "assignee of a bare right to sue" could sue; "[t]he statute nowhere provides that such an assignee may sue, and we think, in view of its designation of who *may* sue,

Hon. Katherine Polk Failla, U.S.D.J.
July 31, 2018
Page 3 of 3

that the omission signals that Congress did not so intend"). Here Rule 17a-3(a)(19) provides that a firm must keep records of the compensation paid to its associated persons, and nowhere provides that a firm must keep records of a subsequent payment by one associated person to another.

If the SEC had really wanted Rule 17a-3(a)(19) to require broker-dealers like Cantor to track what their associated persons do with their post-tax compensation, it could have done so. But it did not do so, despite considerable efforts during a seven-year rulemaking process, stretching from 1996 to 2003. *E.g.* SEC Rel. 34-44992 (Oct. 26, 2001).

**(2) No Knowledge of Violation.** The Complaint does not allege facts showing "knowledge of this violation on the part of" Ludovico. The Complaint does not allege that he had any training on, or was even aware of, this rule promulgated in 2003, a year after the commission sharing began. Nor is it reasonable to expect that Ludovico, a non-lawyer and not part of his firm's legal and compliance functions, would have anticipated the SEC's novel theory, never advanced before this case, that a rule governing the "relationship between each associated person and the ... broker or dealer," should be extended to apply to the relationship between one associated person and another.

**(3) No Substantial Assistance.** The Complaint does not allege facts showing that Ludovico provided "substantial assistance" by "participating" in Cantor's violation "as in something that he wished to bring about" or sought to "make it succeed." Instead, it was his Cantor supervisor Mattessich, the head of his Desk, who sought to share in a portion of his commissions. He complied with his supervisor's request by writing and handing him personal checks on the Desk. (Complaint ¶32) This does not show Ludovico substantially assisting Cantor to make it succeed in a violation. And it does not show recklessness, a statutory element for aiding-and-abetting. "Recklessness in the securities context requires conduct that at the least is highly unreasonable and which represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *Sfiraiala v. Deutsche Bank A.G.*, 2018 WL 1173502, *2 (2d Cir. Apr. 13, 2018) (summary order) (internal quotation marks omitted).

We are available at the Court's convenience for a pre-motion conference. If the Court does not feel a conference is necessary, we are prepared to file our motion immediately. Thank you for considering this pre-motion submission.

                Respectfully submitted,

                */s/ Stephen J. Crimmins*
                Stephen J. Crimmins
                Counsel for Defendant Joseph (Jay) Ludovico

cc: All Counsel of Record (via ECF)