UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE
COMMISSION,

                **Plaintiff,**

        -against-

ADAM MATTESSICH,

                **Defendant.**

18 Civ. 05884 (KPF)

### PLAINTIFF SECURITIES AND EXCHANGE COMMMISSION'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AS TO LIABILITY

Philip A. Fortino
Lee A. Greenwood
Securities and Exchange Commission
New York Regional Office
200 Vesey Street, Suite 400
New York, NY 10281
(212) 336-1014 (Fortino)

*Attorneys for Plaintiff Securities and Exchange Commission*

July 7, 2020

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................................1

ARGUMENT ...................................................................................................................................2

    I.      The Court Should Disregard the Inadmissible Hearsay and Speculation in the Wexler Affidavit. ...........................................................................................................................2

    II.     Mattessich Raises No Material Factual Dispute as to Cantor's Primary Violation. .............4

    III.    Mattessich Raises No Material Factual Dispute as to His Knowledge of Cantor's Primary Violation. ...............................................................................................................6

          A.     Mattessich Knew Cantor Did Not Make or Keep Records of the Commission Compensation Payments Ludovico Made to Him. ..................................................6

          B.     Knowledge of Wrongfulness Is Not an Element of the Commission's Claim. ......7

    IV.    Mattessich Raises No Material Factual Dispute as to His Substantial Assistance. ..............9

CONCLUSION ..............................................................................................................................10

# TABLE OF AUTHORITIES

**Cases**

*Blue v. City of New York*, No. 14 Civ. 7836 (VSB), 2018 WL 1136613 (S.D.N.Y. Mar. 1, 2018) ............. 3

*Epstein v. Kemper Ins.*, 210 F. Supp. 2d 308 (S.D.N.Y. 2002) ................................................................ 2, 3

*Gold v. Titlevest Agency LLC*, No. 18 Civ. 935 (AJN), 2020 WL 2835570 (S.D.N.Y. June 1, 2020) ........ 4

*Holtz v. Rockefeller & Co.*, 258 F.3d 62 (2d Cir. 2001) ................................................................................. 3

*SEC v. Apuzzo*, 689 F.3d 204 (2d Cir. 2012) ................................................................................ 6, 8, 10

*SEC v. Apuzzo*, 758 F. Supp. 2d 136 (D. Conn. 2010) ................................................................................. 8

*SEC v. Drexel Burnham Lambert Inc.*, 837 F. Supp. 587 (S.D.N.Y. 1993) ..................................................... 9

*SEC v. Falstaff Brewing Corp.*, 629 F.2d 62 (D.C. Cir. 1980) ..................................................................... 8

*SEC v. Mattessich*, 407 F. Supp. 3d 264 (S.D.N.Y. 2019) ................................................................ 6, 7, 10

*Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639 (2d Cir. 1998) ................................................................ 4

*Wahad v. FBI*, 179 F.R.D. 429 (S.D.N.Y. 1998) ......................................................................................... 3

**Statutes**

Section 17(a), Securities Exchange Act of 1934 [15 U.S.C. § 78q(a)] ....................................................... 2

Section 20(e), Securities Exchange Act of 1934 [15 U.S.C. § 78t(e)] ............................................. 6, 7, 8

**Rules**

Federal Rule of Civil Procedure 56 ........................................................................................................ 2, 3

Local Civil Rule 56.1 ................................................................................................................................ 2, 3

Securities Exchange Act of 1934, Rule 17a-3 [17 C.F.R. § 240.17a-3] ..................................................... 2

Plaintiff Securities and Exchange Commission respectfully submits this reply memorandum of law, with its response to the Local Civil Rule 56.1 statement of additional purported material facts by defendant Mattessich, in further support of its motion for summary judgment.[1]

**PRELIMINARY STATEMENT**

The Commission's motion for summary judgment relies primarily on Mattessich's own admissions under oath that (1) he received commission compensation from his subordinate, Ludovico, via personal checks; (2) he understood that his employer, Cantor, recorded the commission compensation he received from Ludovico as having been paid to Ludovico; and (3) he knew, while his conduct was ongoing, that Cantor's records of this commission compensation were inaccurate. These admissions, together with other undisputed evidence, entitle the Commission to summary judgment on its claim that Mattessich aided and abetted Cantor's failure to make and keep records of the commission compensation he received from Ludovico.

Mattessich tries to create the impression that genuine material factual disputes exist, including as to matters he has admitted, principally by proffering an affidavit from Ron Wexler ("Wexler"), a former Cantor senior executive whom neither side deposed. Many of Wexler's statements are inadmissible hearsay and speculation and should be disregarded. But, in any event, the facts in the affidavit are not material to any of the elements of the Commission's claim. For example, Wexler offered a new justification for Mattessich's knowing failure to comply with the firm's AE Code system: an administrative issue with his AE Code. But neither Wexler's affidavit nor any other evidence, including

---

[1] This brief uses the same short forms as the Commission's moving brief ("Br.") (ECF No. 65). In addition, "Opp'n" refers to Defendant Adam Mattessich's Opposition to Plaintiff's Motion for Summary Judgment (ECF No. 68); "Mattessich 56.1 Stmt." refers to Defendant Adam Mattessich's Response to Plaintiff's Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1 (ECF No. 69); "Greenspan Decl." refers to the Declaration of Noam Greenspan (ECF No. 70); and "56.1 Reply Stmt." refers to Plaintiff's Response to Defendant Adam Mattessich's Statement of Additional Material Facts Pursuant to Local Civil Rule 56.1, filed herewith.

Mattessich's own testimony, indicates that Mattessich was aware of this purported administrative issue or that Mattessich entered into his arrangement with Ludovico because of it.

Mattessich's other principal argument against summary judgment is that his admissions that Cantor's records were inaccurate do not suffice to satisfy the knowledge element of aiding and abetting liability. Mattessich argues that the Commission must demonstrate that he understood the "consequences" of his action, including that he understood those consequences to be "wrongful." Mattessich misstates the law. Both the cases Mattessich cites and the Court's decision denying the motions to dismiss make clear that the knowledge element is satisfied if Mattessich understood that his conduct would result in the inaccuracy of Cantor's records, without regard to his subjective belief as to the legality or wrongfulness of the conduct. But even if the Commission had to show knowledge of wrongfulness, the undisputed evidence shows that Mattessich knew that the payments at issue did not comply with Cantor's long-standing rules for recording commission compensation, which Mattessich helped to administer and enforce during the Relevant Period.

In sum, Mattessich proffers no facts showing any material factual dispute as to the elements of the Commission's claim: (1) Cantor's primary violation of Exchange Act Section 17(a) and Rule 17a-3(a)(19) thereunder, (2) Mattessich's knowledge of Cantor's violation, and (3) Mattessich's substantial assistance. The Court therefore should grant the Commission summary judgment as to liability.

## ARGUMENT

### I. The Court Should Disregard the Inadmissible Hearsay and Speculation in the Wexler Affidavit.

Parties may use an affidavit to support or oppose a motion for summary judgment if the affidavit is "made on personal knowledge, set[s] out facts that would be admissible in evidence, and show[s] that the affiant . . . is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "Statements in an affidavit or Rule 56.1 statement are inappropriate if they are not based on personal knowledge, contain inadmissible hearsay, are conclusory or argumentative, or do not cite to

2

supporting evidence." *Epstein v. Kemper Ins.*, 210 F. Supp. 2d 308, 314 (S.D.N.Y. 2002) (citing *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 71 (2d Cir. 2001)). "A court may either disregard or strike portions of a Rule 56.1 statement that violate these principles." *Blue v. City of New York*, No. 14 Civ. 7836 (VSB), 2018 WL 1136613, at *1 (S.D.N.Y. Mar. 1, 2018) (citing *Holtz*, 258 F.3d at 73).

Three portions of the Wexler affidavit (Greenspan Decl. Ex. A at ¶¶ 15–27, 34, 36) and the corresponding assertions in Mattessich's Local Civil Rule 56.1 Statement (Mattessich 56.1 Stmt. at ¶¶ 69, 76–77, 91, 102–103, 110–122) are inadmissible hearsay or unsupported speculation, as described below. The Court therefore should disregard this evidence.

*First*, Wexler asserted that Mattessich could not receive commission compensation through his AE Code due to an administrative issue with his AE Code. (*See* Greenspan Decl. Ex. A at ¶¶ 15–23.) Wexler stated that he initially heard about this purported issue from a conversation with Distell, Cantor's chief compliance officer, at the end of or after the Relevant Period, and that he does not know the source of Distell's knowledge. (*Id.* at ¶¶ 15, 22.) Wexler stated that he thereafter investigated and "learned" additional details, but he provided no non-hearsay foundation for this knowledge. (*Id.* at ¶¶ 16–21.) The Court should disregard these statements. *See Wahad v. FBI*, 179 F.R.D. 429, 437-38, 440 & n.6, n.17 (S.D.N.Y. 1998) (disregarding portions of affidavit submitted in opposition to summary judgment motion where there was "no way to ascertain which portion of this testimony is based on inadmissible hearsay . . . as opposed to potentially non-hearsay sources").

*Second*, Wexler described various commission pooling arrangements among other Cantor employees—all of which involved *Cantor's* payment of pooled commissions to traders and none of which involved any Cantor employee paying commissions to another employee, by personal check or otherwise. (*See* Greenspan Decl. Ex. A at ¶¶ 24–27.) Wexler suggested that these arrangements also may have resulted in inaccurate compensation records (*id.* at ¶ 27) and described hearsay statements Distell made to Wexler about these arrangements (*id.* at ¶ 25). Wexler did not participate

3

in these other arrangements and provides no foundation for his statements.  It appears that Wexler could have learned of these arrangements only by speaking with one or more people, reviewing documents, or both.  The Court therefore also should disregard these statements.  *See Gold v. Titlevest Agency LLC*, No. 18 Civ. 935 (AJN), 2020 WL 2835570, at *5 (S.D.N.Y. June 1, 2020) ("Statements cannot be used to . . . oppose a motion for summary judgment when 'there is no way to ascertain which portions . . . were based on personal knowledge.'") (quoting *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir. 1998)).

*Third*, Wexler speculated that Cantor could have fixed its commission compensation records afterward by "recreating" the records and rebooking trades from 2013 based on the personal checks and other information from Mattessich and Ludovico.  (Greenspan Decl. Ex. A at ¶¶ 34, 36.) Because Wexler has no personal knowledge of either Cantor's commission records concerning Mattessich's arrangement with Ludovico or what records Mattessich and Ludovico had or did not have of their arrangement, the Court should disregard these speculative statements.

**II.     Mattessich Raises No Material Factual Dispute as to Cantor's Primary Violation.**

The undisputed evidence shows that Cantor violated Exchange Act Section 17(a) and the Compensation Record Rule by failing to maintain records of the commission compensation paid by Ludovico to Mattessich.  Like the other witnesses who testified, Mattessich acknowledged that Cantor used AE Codes to record payments of commission compensation to its employees:

> Q.  What is an AE code?
> A.  All front-office individuals at Cantor get an AE code to be attached to account assignments and/or trades *so that the firm can track, for instance, where commissions should get paid from a given transaction.*
> \*         \*          \*
> A.  Cumulatively, the two or more parties that are on that split AE code -- whatever percentages are individually assigned to them would need to total 100 percent.
> Q.  For what purpose?
> A.  *For recording of commissions paid.*

4

(Greenwood Decl. Ex. 3 (Mattessich Dep. Tr.) at 50:16–20, 54:17–22) (emphasis added).) Cantor undisputedly recorded the commission compensation Ludovico paid to Mattessich, from 2004 through the Relevant Period, under Ludovico's AE Code. (*See* Mattessich 56.1 Stmt. at ¶¶ 32–33, 36.) And Cantor had no records of the payments Ludovico made to Mattessich during the Relevant Period, as both Cantor's corporate representative and Distell testified without contradiction. (*See* 56.1 Stmt. at ¶ 43.) Cantor's records during the Relevant Period thus undisputedly failed to reflect that any of the commission compensation Cantor paid to Ludovico was paid to Mattessich.

Mattessich has failed to raise a material factual dispute as to Cantor's primary violation. *First*, Mattessich argues that the Commission is not entitled to summary judgment because it has not cited any inaccurate record by Cantor. (*See* Opp'n at 16–17.) But the absence of such a record does not create a triable issue of fact. The Commission has cited competent, unrebutted evidence—the testimony of multiple witnesses, including admissions by Mattessich—to establish Cantor's failure to make and keep a record of the commission payments Mattessich received directly from Ludovico. (*See* 56.1 Stmt. at ¶¶ 32–33, 43.) *Second*, Mattessich seeks to limit his own admissions that Cantor's records were inaccurate to a time before the Relevant Period. (*See* Opp'n at 17.) But Mattessich testified (and stipulated) that the commission compensation he received from Ludovico was recorded to Ludovico's AE Code throughout the life of the arrangement, including during the Relevant Period. (*See* 56.1 Stmt. at ¶¶ 32–33, 36.) *Third*, Mattessich argues that Distell's testimony that Cantor's records were inaccurate lacks credibility. (*See* Opp'n at 17–18.) Mattessich, however, does not identify a single piece of evidence that contradicts Distell's testimony, which is corroborated by the testimony of Cantor's corporate representative. Instead, Mattessich cites to the Wexler affidavit and testimony by various witnesses as to what they thought or believed at the time, none of which raises a dispute as to whether Cantor's books and records were in fact inaccurate.

5

### III. Mattessich Raises No Material Factual Dispute as to His Knowledge of Cantor's Primary Violation.

#### A. Mattessich Knew Cantor Did Not Make or Keep Records of the Commission Compensation Payments Ludovico Made to Him.

In its Opinion and Order denying the motions to dismiss, the Court held that a defendant's knowledge of the circumstances that constitute the primary violation satisfies the knowledge element of an aiding-and-abetting claim under Exchange Act Section 20(e). *See SEC v. Mattessich*, 407 F. Supp. 3d 264, 272 (S.D.N.Y. 2019). The undisputed facts satisfy this standard. Mattessich has (1) admitted that Cantor used AE Codes—a system he helped administer and indeed reminded other Cantor employees to comply with during the Relevant Period—to record which employees received commission compensation (*see* Mattessich 56.1 Stmt. at ¶¶ 13, 16–22); (2) stipulated that the commissions Ludovico paid him were recorded to Ludovico's AE Code (*see id.* at ¶ 32); and (3) admitted that he understood at the time that Cantor recorded the commissions Ludovico paid to him as having been paid to Ludovico (*see id.* at ¶ 33).

Despite these admissions, Mattessich now asserts that there are material factual disputes as to his knowledge of Cantor's failure to record his commission payments. None of the evidence cited by Mattessich raises a triable issue of fact. *First*, Mattessich cites Wexler's hearsay statements about other ways in which Cantor may have recorded pooled commission payments. (*See* Opp'n at 19.) At most, these portions of the Wexler affidavit, which should be disregarded entirely, indicate that *other* Cantor employees, not Mattessich and Ludovico, engaged in commission-splitting outside of the AE Code system in a manner documented partly through the firm's payroll system. (*See* Greenspan Decl. Ex. A at ¶ 24.) These facts have no bearing on Mattessich's knowledge. There is no evidence that Mattessich was aware of this unrelated conduct or that he believed that Cantor's payroll systems recorded Ludovico's payments to him. In fact, the undisputed evidence contradicts

any such suggestion: Mattessich received commissions from Ludovico by personal check, not through the Cantor payroll.

*Second*, Mattessich argues that although he admitted in testimony that he knew Cantor maintained inaccurate records *before* the Relevant Period, a triable factual issue exists as to Mattessich's knowledge during the Relevant Period. (*See* Opp'n 20–21.) Mattessich's argument misses the mark. Mattessich admitted and stipulated that Cantor recorded the commissions he received from Ludovico to Ludovico's AE Code, admitted that Cantor used AE Codes to record commission payments, and admitted that he understood, by the start of the Relevant Period, that Cantor in fact was recording his commissions as attributable to Ludovico. (*See* 56.1 Stmt. at ¶¶ 13, 32–33, 44–46.) To the extent Mattessich contends that he reasonably believed Cantor began recording the personal check payments he was receiving from Ludovico during the Relevant Period, no record evidence, not even Mattessich's own testimony, supports such a claim.

B. **Knowledge of Wrongfulness Is Not an Element of the Commission's Claim.**

Mattessich also argues that the Commission is not entitled to summary judgment because, even if he knew that Cantor's records were inaccurate, there are triable issues of material fact as to whether he knew his conduct was illegal or wrongful. (*See* Opp'n at 18–24.) Specifically, Mattessich argues that certain facts related to his knowledge of wrongfulness are disputed, including that (1) Mattessich and Ludovico's arrangement was secret; (2) the arrangement was not approved by Mattessich's superiors; and (3) Cantor's policies and procedures prohibited the arrangement. (*Id.*)

*First*, Mattessich misstates the law: knowledge of illegality or wrongfulness is not an element of an aiding-and-abetting claim under Exchange Act Section 20(e). The Court already has rejected Mattessich's argument to the contrary in holding that the Commission did not have to demonstrate that Mattessich knew his conduct was illegal. *Mattessich*, 407 F. Supp. 3d at 272–73. Mattessich cites no case, and the Commission is aware of none, requiring that the Commission prove, in addition to

a defendant's actual knowledge of the consequences of his actions, that he also knew his conduct was wrongful. Mattessich relies solely on *SEC v. Falstaff Brewing Corp.*, 629 F.2d 62 (D.C. Cir. 1980), for the proposition that, to be liable for aiding and abetting, a defendant must have "understood the *consequences* of [his] actions." (Opp'n at 19 (emphasis and alteration in original).) But *Falstaff*'s reference to "consequences" does not imply that a defendant must have understood the legal consequences of his actions. To the contrary, in *Falstaff*, the D.C. Circuit, on the same page Mattessich cites, expressly rejected the argument that the Commission was required to prove knowledge of wrongfulness to establish liability. *See Falstaff*, 629 F.2d at 77 ("Knowledge means *awareness of the underlying facts*, not the labels that the law places on those facts. . . . A knowledge of what one is doing and the consequences of those actions suffices.") (emphasis added).

Mattessich also argues that *SEC v. Apuzzo*, 689 F.3d 204 (2d Cir. 2012), supports his position because there it was "obvious to the defendant[s] that their conduct was both wrongful and deceptive and therefore that they might cause themselves or another entity to commit a regulatory violation." (Opp'n at 23.) *Apuzzo* supports no such inference. Rather, the *Apuzzo* district court held the Commission had adequately pleaded knowledge under Exchange Act Section 20(e) because it had alleged that the defendant, like Mattessich, knew the records at issue were inaccurate. *See Apuzzo*, 689 F.3d at 211 ("'Apuzzo knew that the results from the transactions would be inaccurately reflected in URI's financial statements if the true structure of the transactions was not known to URI's auditor; and Apuzzo knew that URI's auditor was being misled.'") (quoting *SEC v. Apuzzo*, 758 F. Supp. 2d 136, 148 (D. Conn. 2010)).

Even if Mattessich were correct as to the legal standard for knowledge, the Commission still would be entitled to summary judgment. As his testimony quoted above in Section II shows, Mattessich knew that Cantor used the AE Code system to record commission payments. And, during the Relevant Period, Mattessich helped administer the AE Code system by approving

8

changes to the AE Codes assigned to particular customer accounts and helped enforce compliance with the AE Code system, including by chastising other Cantor employees for failing to follow "the rules." (Br. at 3–4.) At the same time, Mattessich deliberately elected not to follow Cantor's system for recording commission compensation, instead accepting payments he knew to be recorded to Ludovico's AE Code, and he cites no evidence that he received permission to do so. (*See* Reply 56.1 Stmt. at ¶¶ 57, 69, 86, 100.) Mattessich alludes to his own testimony that he disclosed the arrangement to his supervisor, Elon Spar ("Spar"). (Opp'n at 20.) But Mattessich has admitted that he did not tell Spar how Ludovico was paying him commissions (by personal check) or that the payments had not been recorded by Cantor. (Reply 56.1 Stmt. at ¶ 86.)[2]

## IV. Mattessich Raises No Material Factual Dispute as to His Substantial Assistance.

A defendant substantially assists a primary violation of Exchange Act Section 17(a) and the rules thereunder when his conduct causes the broker-dealer to have inaccurate books and records. *See SEC v. Drexel Burnham Lambert Inc.*, 837 F. Supp. 587, 610 (S.D.N.Y. 1993) (holding defendants aided and abetted violations of Exchange Act Section 17(a) and Rules 17a-3 and 17a-4 where defendants failed to record beneficial interest in securities purchased through the broker-dealer). As described above, no dispute exists that Mattessich's receipt of commission compensation payments from Ludovico by personal check resulted in Cantor's inaccurate books and records.

Mattessich nonetheless argues that summary judgment is inappropriate because Cantor was on notice of his arrangement with Ludovico in late 2013 and took no steps to fix its books and records. (*See* Opp'n at 24–25.) This argument has no merit. *First*, any failure by Cantor to correct its records does not preclude a finding that Mattessich provided substantial assistance, because the Commission need not show (as Mattessich acknowledges, *id.* at 25) that a defendant proximately

---

[2] Spar testified that he had no recollection of Mattessich's purported disclosure to him and that Mattessich *did not* disclose that Ludovico was making commission payments to him using personal checks. (Greenspan Decl. Ex. B (Spar Dep. Tr.) at 30:18–24, 32:14–33:10.)

9

caused the primary violation. *See Mattessich*, 407 F. Supp. 3d at 273 (citing *Apuzzo*, 689 F.3d at 213). Thus, any intervening failure by Cantor to correct its records would not absolve Mattessich of liability. *See Apuzzo*, 689 F.3d at 213 (rejecting defendant's argument that another person's "actions were superseding and intervening causes that vitiate[d] Apuzzo's liability for the fraud"). *Second*, the record fails to support Mattessich's assertion that Cantor could have corrected its records. To the contrary, Distell testified that, even if Mattessich or Ludovico had provided Cantor with copies of the checks, there was no way to correct Cantor's records because the checks would not have provided all the information Cantor needed, such as identifying the transactions on which Mattessich received commission payments. (*See* Reply 56.1 Stmt. at ¶ 101.) Although Wexler speculated that Distell could have obtained the information he needed from Mattessich and Ludovico (*see* Greenspan Decl. Ex. A at ¶ 34), they both admitted that they could not provide such information. Specifically, Mattessich testified that the payments and corresponding accounts were left to Ludovico's discretion, and Ludovico testified that he kept no records at all related to his payments to Mattessich other than possibly copies of the checks. (Reply 56.1 Stmt. at ¶ 101.) Mattessich has thus failed to raise any material factual dispute as to substantial assistance.

## CONCLUSION

For the reasons above and in the Commission's moving papers, the Court should grant the Commission's motion for summary judgment as to liability against Mattessich in its entirety.

Dated: July 7, 2020  
       New York, New York

SECURITIES AND EXCHANGE COMMISSION

By:   /s/ Philip A. Fortino  
      Philip A. Fortino  
      Lee A. Greenwood  
      New York Regional Office  
      200 Vesey Street, Suite 400  
      New York, NY 10281  
      (212) 336-1014 (Fortino)